**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

LANE KIRKPATRICK,

Plaintiff,

Case No. 3:23-cv-1180-TJC-LLL

v.

DAVE KERNER, in his Official Capacity as Executive Director of the Department of Florida Highway Safety and Motor Vehicles,

Defendant.

---

# ORDER

In 2023, plaintiff Lane Kirkpatrick filed this suit to challenge a 2014 Florida statutory amendment which requires him to have a driver's license or identification marked "SEXUAL PREDATOR."[1] Kirkpatrick alleges the mark is compelled speech that violates his First Amendment right to free speech, including the right to refrain from speaking. In addition to defending the statute on the merits, Defendant Dave Kerner, the Executive Director of the Department of Florida Highway Safety and Motor Vehicles ("Director"), contends Kirkpatrick does not have standing and that his claim is barred by the

---

[1] Final decision in this case was delayed while awaiting pertinent decisions by the Eleventh Circuit and Florida courts.

statute of limitations. Following a hearing, the Court denied motions to dismiss and for a preliminary injunction so the matter could be considered on a fully developed record (Docs. 31 & 34). Thereafter, the parties filed briefs and exhibits in support of their positions via cross-motions for summary judgment (Docs. 39-43, 46, 49); the Court held a hearing on those motions, the transcript of which (Doc. 62) is incorporated by reference. At the Court's direction, the parties filed further briefs after supplemental authorities issued (Docs. 52-57, 59, 61, 63-71, 73).

## I. Background Facts[2]

Almost thirty years ago, Kirkpatrick was arrested in Clay County, Florida on charges of sexual battery upon a child, the conviction for which results in a designation as a sexual predator under Florida's Sexual Predators Act ("Act"), Fla. Stat. § 775.21.[3] Doc. 40-1 at Tr. 17, Doc. 40-2, Doc. 40-3. Kirkpatrick ultimately entered a plea deal, resulting in a "withholding of adjudication."[4]

---

[2] Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The material facts here are undisputed; as both parties have moved for summary judgment, the result hinges on determining which side is entitled to judgment as a matter of law.

[3] Generally speaking, Florida law designates as "sexual predators" those who are "[r]epeat sexual offenders, sexual offenders who use physical violence, and sexual offenders who prey on children." Fla. Stat. § 775.21(3)(a); see also Fla. Stat. § 775.21(4).

[4] Kirkpatrick claims he is innocent and only entered the plea to avoid the

Doc. 40-1 at Tr. 17, 101-02; Doc. 40-17 at 2. The Act treats this as a conviction. Fla. Stat. § 775.21(2)(e). The Act was effective in 1993 and has been amended multiple times, including a variety of changes to the notification and registration requirements. See West Fla. Stat. Ann. § 775.21 Credits (listing initial 1993 enactment and all subsequent amendments). Absent a full pardon or having a conviction set aside, sexual predators must comply with the registration requirements for life. Fla. Stat. § 775.21(6)(l).

Among other requirements of the Act, sexual predators are required to have and pay for either a driver license or official ID issued by the Florida Department of Highway Safety and Motor Vehicles.[5] Fla. Stat. § 775.21(6)(f). Starting in 2007, the driver license for a sexual predator was required to be marked on the front "775.21, F.S," the statutory reference to the Act. See 2007 Fla. Laws Ch. 2007-207, § 1, codified at Fla. Stat. § 322.141(3)(a) (2007). Sexual offenders were required to carry licenses bearing a similar mark indicating the statutory reference for sexual offenders, "943.0435, F.S." See 2007 Fla. Laws Ch. 2007-207, § 1, codified at Fla. Stat. § 322.141(3)(b) (2007). When the 2007 amendment went into effect, Kirkpatrick obtained a driver

---

possibility of a lengthy jail term. Doc. 39 at 2. The Director filed documents relating the details of the charges and subsequent proceedings. Doc. 40, Ex. 2-19.

[5] This opinion refers to the driver license requirements but they are equally applicable to official IDs. Fla. Stat. § 775.21(6)(f)(1).

license marked "775.21, F.S." Though he disagreed that he was a sexual predator, Kirkpatrick knew Florida designated him as such and he did not take issue with having to carry a license bearing that statutory designation. Doc. 40-1 at Tr. 9, 13-14.

In 2014, the marking requirement for the driver licenses of sexual predators changed from the statutory reference of "775.21, F.S." to the words "SEXUAL PREDATOR" which appear in capital letters on the face of the license See 2014 Fla. Laws Ch. 2014-216, § 31, codified at Fla. Stat. § 322.141(3)(a) (2014). The new marking requirement did not include any legislative findings, reports or studies about why the change was needed and there was not a similar change for sexual offenders, whose licenses continue to include only the statutory reference. Doc. 35 ¶ 18; Fla. Stat. § 322.141(3)(b). The driver license marking requirement for sexual predators has not changed since 2014. See Fla. Stat. § 322.141(3)(a).

Kirkpatrick learned of the "SEXUAL PREDATOR" marking requirement in 2014, and received a reissued license with that marking in September 2015. Doc. 40-1 at 86–87. At the time, Kirkpatrick was upset about the changed mark. Doc. 40-1 at Tr. 87-88. According to the State's sexual predator registry records, Kirkpatrick indicated his discontent to law enforcement when advised of the upcoming change and stated he would not comply. Doc. 43-1 at 2. Kirkpatrick consulted a lawyer about how to mount a challenge to the new

requirement but determined he could not afford to do so. Doc. 40-1 at Tr. 88-89. At that time, Kirkpatrick did not try to find a lawyer or legal organization that might be able to represent him without cost. Doc. 40-1 at Tr. 89. Since getting the marked license in 2015, Kirkpatrick alleges that when presenting his license, he has been subject to additional searches or scrutiny at airport security, a hotel (a Disney property) cancelled his reservation at check-in, he lost a job as a handyman (he has since retired), and he has felt stigmatized or experienced fear and stress at doctor's offices or similar settings where he presents his license. Doc. 1 ¶¶ 28-32; Doc. 40-1 at Tr. 66–78, 87-90, 100, 104-06. Kirkpatrick states he began suffering these injuries once he obtained a license marked SEXUAL PREDATOR in 2015. Doc. 40-1 at Tr. 89, 106-07. Kirkpatrick renewed his license in 2020 (which continues to bear the same mark[6]), and filed this lawsuit in 2023. Doc. 40-1 at Tr. 79.

In this suit, Kirkpatrick does not complain of Florida's designation of him as a sexual predator, the registration requirements, the reporting requirements, or the other restrictions with which he must comply. See Doc. 1; Doc. 40-1 at Tr. 30-32, 95-96. Kirkpatrick's challenge is only to the requirement that he carry a driver license bearing the words "SEXUAL PREDATOR" (rather than a license bearing the statutory reference "755.21

[6] A redacted photo of Kirkpatrick's current driver license is in the record at Doc. 41-1 at 7-8.

F.S.," as was previously required), claiming that the 2014 amendment is unconstitutionally overbroad, forcing Kirkpatrick and others designated as sexual predators to engage in speech communicating the government's message in violation of the First Amendment.

## II. Analysis

### A. Plaintiff's Standing

To demonstrate Article III standing, Kirkpatrick must show (1) an injury in fact, (2) a causal connection between the injury and complained of conduct, and (3) that the injury can be redressed by a favorable decision. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). The Director challenges each of these, arguing that Kirkpatrick lacks admissible evidence of injury because he merely testified about his own experiences of how people react to the marked license when it is proffered; that without evidence of injury, there is no causal connection; and that Kirkpatrick's alleged injury is being identified as a sexual predator, yet even if the statute is declared unconstitutional, Kirkpatrick will still be identified as a sexual predator by use of the statutory reference—meaning a favorable decision would not redress the injury.

The Court is satisfied that Kirkpatrick's testimony about his own experience when he presents the license is admissible. Kirkpatrick testified he had a hotel reservation cancelled, received dirty looks, lost work, and had extra screenings by TSA. Even if these did not constitute actual injury, a

finding of forced speech or violation of a constitutional right would itself be an injury. See, e.g., Scott v. Roberts, 612 F.3d 1279, 1297 (11th Cir. 2010) ("[E]ven a temporary infringement of First Amendment rights constitutes a serious and substantial injury.") (citation omitted); Solomon v. City of Gainesville, 763 F.2d 1212, 1214 (11th Cir. 1985) (noting the "liberal standing rules utilized in First Amendment challenges of overbreadth") (citations omitted). Kirkpatrick adequately alleges an injury and a causal connection between the injury and the complained of conduct.

As to redressability, the Director is correct that even with a favorable decision, Kirkpatrick will still be identified as a sexual predator by use of the statutory reference on his driver license and the public availability of the information on the FDLE website. This argument, however, does not consider that different forms of identification (or communication) have different consequences. Kirkpatrick plausibly contends that the statutory reference alone is more obscure and that it is the requirement that the words "SEXUAL PREDATOR" be on the license that causes him to suffer the most significant of his injuries. Therefore, Kirkpatrick's challenge to the 2014 amendment and its consequences are sufficiently redressable by a favorable decision.

Accordingly, the Court finds Kirkpatrick has standing.

### B. Statute of Limitations

The Director argues Kirkpatrick's suit is barred by a four-year statute of limitations,[7] which began to run in 2014 when Kirkpatrick learned of the change, or at least in 2015, when Kirkpatrick was first issued a license marked "SEXUAL PREDATOR." Doc. 42 at 9–14.

There is no question that Kirkpatrick was aware of the 2014 amendment in 2014 and that he was certainly affected by it in 2015 when he paid for and received his first Florida driver license bearing the mark "SEXUAL PREDATOR." In July 2014, a Florida law enforcement officer reported on Kirkpatrick's sexual predator registry form that Kirkpatrick stated he would not comply with the upcoming change to his license because doing so would violate his rights. Sometime thereafter Kirkpatrick consulted a lawyer about challenging the law. Kirkpatrick states that from the time he received the new license in 2015, he began experiencing the stigma he associated with the new law as well as anxiety, stress, and other ill effects when presenting his license, all of which continue to this day. "The statute of limitations for a constitutional challenge to a statute is triggered by injury." Doe ex rel. Doe v. Swearingen, 51 F.4th 1295, 1304 (11th Cir. 2022) (addressing statute of

[7] There is no dispute that a § 1983 action filed in Florida is subject to a four-year statute of limitations. See Chappell v. Rich, 340 F.3d 1279, 1283 (11th Cir. 2003).

limitations issues in sex offender registry case). Kirkpatrick's claim accrued, at the very latest, in 2015 when he received and began experiencing ill effects from the new license. Indeed, at argument, Kirkpatrick agreed he had a ripe cause of action back in 2014 or 2015. Doc. 62 at Tr. 19-20. This case was filed in 2023. Thus, barring an exception, Kirkpatrick's claim is untimely under the four-year statute of limitations.

Kirkpatrick argues that two possible exceptions apply: first, that renewing and reissuing his license in 2020 constituted the second in a series of repeated violations, each of which starts a new limitations period; and second, that his claim is timely under the continuing violation doctrine.[8] Doc. 46 at 4.

The Eleventh Circuit recognizes an exception to the statute of limitations for "a series of repeated violations of an identical nature," each one of which is its own violation, not dependent on actions taken before the limitations period began. Knight v. Columbus, Ga., 19 F.3d 579, 582-83 (11th Cir. 1994). See also Swearingen, 51 F.4th at 1306 ("[W]hen a defendant takes separate and discrete acts that repeatedly violate the law . . . a plaintiff may seek to remedy

[8] Kirkpatrick does not argue that his inability to afford a lawyer is a basis to equitably toll the limitations period, "a form of extraordinary relief" available only when a party is faced with "extraordinary circumstances that are both beyond his control and unavoidable even with diligence." Bhd. of Locomotive Eng's and Trainmen Gen. Comm. of Adjustment CSX Transp. N. Lines v. CSX Transp., Inc., 522 F.3d 1190, 1197 (11th Cir. 2008) (emphasis omitted) (citations omitted). At oral argument, Kirkpatrick agreed that his inability to afford a lawyer was not a defense to the statute of limitations. Doc. 62 at Tr. 21.

the discrete violations that occurred within the limitations period.") (citing Knight, 19 F.3d at 581-82).

In Knight, a group of fire department officers claimed the City failed to pay them overtime in violation of the Fair Labor Standards Act (FLSA). 19 F.3d at 580. More than three years earlier (the relevant timeframe for the applicable statute of limitations), the City had classified the officers as exempt employees not due to be paid FLSA overtime. Id. The City argued the officers' claims were untimely. Id. at 580-81. But the Eleventh Circuit determined that if the officers were entitled to overtime, each paycheck without overtime within the three-year limitations period was a new violation for which they could seek recovery. Id. at 581. In distinguishing between these repeated violations and those of the continuing violation doctrine (further discussed below), the Eleventh Circuit explained that the present claims did not depend on the City's earlier classification—if the officers were not exempt employees under the FLSA, then each paycheck (within the limitations period) that did not include overtime was a new violation, regardless of why or when the officers were erroneously classified as exempt. Id. at 583.

The Knight case included a second group of plaintiffs who did not fare as well. More than three years earlier, the City had determined not to give pay raises to non-officer plaintiffs who claimed they were due to receive raises under the FLSA. Id. at 583-84. Again, the City raised the statute of limitations as

a defense. Id. at 580. This time the Eleventh Circuit agreed, holding that the non-officers had not suffered from repeated violations of the FLSA, as had their officer colleagues. Id. at 584. Instead, the non-officers' claim was that the City failed to give them pay raises back in 1987, an act outside the limitations period (and of which the plaintiffs were aware). Id. The City's action, "even if unlawful," was therefore "insulated from legal attack." Id. That the non-officers continued to feel the repercussions of that decision in each paycheck did not save their claim. Id.

Like the non-officer plaintiffs in Knight, in Brown v. Georgia Bd. of Pardons & Paroles, 335 F.3d 1259 (11th Cir. 2003), the plaintiff unsuccessfully argued that a later event started a new limitations period. Brown, a state prisoner since 1983, raised a constitutional ex post facto challenge to the retroactive application of a Georgia parole policy that decreased the frequency of parole review from no less than every three years to no less than every eight years. Id. at 1259-60. Brown had been informed in 1995 that his request for parole was denied and would not be reconsidered until 2000. Id. at 1260. In 2001, Brown's parole was reconsidered and again denied, and his next parole hearing was set for 2007. Id. Brown sued in 2002. Id. The Eleventh Circuit rejected Brown's claim that the 2001 decision to set-off his parole reconsideration until 2007 was a "distinct and separate harm" from the original 1995 decision to put off his parole review until 2000. Id. at 1261. As the Court

explained, "[w]hat Brown ignores is the fact that the statute of limitations begins to run from the date the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights," which, for Brown, was in 1995 when the Board applied its new policy. Id. at 1261-62 (citation omitted). "Each time Brown's parole reconsideration hearing is set, it does not amount to a distinct and separate injury." Id. at 1261. "The successive denials of parole do not involve separate factual predicates and therefore do not warrant separate statute-of-limitations calculations." Id. at 1262; see also Holland v. Governor of Georgia, No. 25-14515, 2026 WL 1329206, at *2 (11th Cir. May 11, 2026)[9] (explaining that enforcement of sex offender registry requirements were not alleged to be separate statutory violations giving rise to discrete injuries and new causes of action but were instead traceable to plaintiff's initial registration as a sex offender). Cf. Swearingen, 51 F.4th at 1307-08 (holding injuries "expressly related" to threatened enforcement of newly added registry provisions were not time-barred where the injuries were not previously suffered, but that claims that aggressive tactics by Commissioner allegedly damaged plaintiffs' reputations were not actionable discrete acts because they caused the same

[9] In this opinion, the Court relies on unpublished decisions as persuasive authority, not as binding precedent. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022).

injury plaintiffs allegedly suffered long ago (though some were timely under the continuing violation doctrine)).

Kirkpatrick argues he is like the officer plaintiffs in Knight, and with each renewal of his driver license he again suffers a new violation. But his challenge is to the 2014 statutory amendment that requires the marked license. The renewal of the license—something all Florida drivers do every eight years[10]—is not a new violation.[11] While it is true that Kirkpatrick is subject to penalty if he fails to renew (a penalty far more serious than those applicable to other Florida drivers who fail to timely renew[12]), his challenge is to the mark on his license which he has carried since 2015. And while some of his sex offender registration requirements are tied to the license renewal timeframe (see, e.g., Fla. Stat. § 322.141(4)), those requirements are not part of his legal challenge here. Unlike the officer plaintiffs in Knight (and like Brown and the

---

[10] See Fla. Stat. § 322.18(4)(a).

[11] Kirkpatrick did not allege in his complaint that the 2020 renewal caused a violation of his rights. Of course, because the statute of limitations is an affirmative defense, a plaintiff need not plead facts in his complaint to avoid it. See, e.g., Nance v. Comm'r, Ga. Dep't of Corr., 59 F.4th 1149, 1154 (11th Cir. 2023) (citation omitted).

[12] Under the Act, a sexual predator who fails to renew a driver license commits a third-degree felony. See Fla. Stat. § 775.21(10)(a). There is no renewal "requirement" for most other drivers, but driving without a valid license, which includes a license that has expired by more than six months, is a second-degree misdemeanor (for first time offenders). See Fla. Stat. § 322.03(1)(b), § 322.03(6).

non-officer plaintiffs in Knight), Kirkpatrick's claim is entirely dependent on action taken outside the limitations period, here, in 2014. The license Kirkpatrick received in 2015 said SEXUAL PREDATOR and the license he received in 2020 merely keeps that same designation. And unlike in Swearingen, 51 F.4th at 1307, where some of the plaintiffs' claims alleged new injuries from new registration requirements, when Kirkpatrick renewed his license in 2020, he did not face a new and different registration requirement, or a change in the frequency of his reporting requirements, or any new threats of enforcement.

Admittedly, the Swearingen Court queried whether a sex offender could make an argument that a new claim accrues each time he or she is made to register or re-register (an argument the Swearingen plaintiffs had not made so the Court did not further address). Id. at 1309. But unlike the ordinary license renewal Kirkpatrick (like all Florida drivers) undertakes every eight years, the registration (and re-registration) requirements the Swearingen plaintiffs challenged included burdensome and time-consuming actions to re-register in person up to eight times a year and to do so within 48 hours of any change, including, for example, leaving a residence for more than three days or having a roommate get a new license plate number. Id. at 1299, 1309. The re-registration requirements were based on the myriad new factual predicates the Swearingen plaintiffs encountered, not tethered to prior events, and carried

new penalties for non-compliance. Id. at 1301; see also Knight, 19 F.3d at 583 (holding officers' overtime pay claims were timely where they were not dependent on actions outside the limitations period); cf. Brown, 335 F.3d at 1262 ("[S]uccessive denials of parole do not involve separate factual predicates and therefore do not warrant separate statute-of-limitations calculations."). Indeed, the Swearingen plaintiffs had alleged that prior to the 2018 statutory amendments (which was also the year they sued), the registry laws presented a "manageable burden." Id. at 1300. It was only the 2018 amendments that brought on the onerous changes which they timely challenged. Id. at 1301. Here, by contrast, Kirkpatrick has faced (and complained of) the same requirements since 2014 and indeed, conceded that his challenge to the SEXUAL PREDATOR designation on his license was ripe when he received that license in 2015. Kirkpatrick's 2020 driver license renewal was not analogous to the registration requirements in Swearingen.

Kirkpatrick also cites Swearingen for the proposition that "[b]ecause the enforcement of an unconstitutional statute causes an injury, a person can challenge a statute enacted long ago based on a new threat of enforcement." Id. at 1304. But that point was in the context of explaining that the effective date of a statute may not necessarily be the time that an injury occurs (citing as an example the passage of a statute that may never be enforced against a particular plaintiff). Id. As the Court went on to explain, claims accrue when

"plaintiffs [are] injured by the allegedly unconstitutional actions they are challenging." Id. at 1305. And while the Eleventh Circuit determined that some of the Swearingen plaintiffs' claims accrued during the relevant limitations period because that's when they were injured, id. at 1307, others were deemed timely under the continuing violations doctrine, id. at 1307, 1308[13], and still others were barred by the statute of limitations, id. at 1310. As to those claims which were barred, the Swearingen Court found the plaintiffs faced "nothing more than the lingering effects" of an out of time action by defendants—the more than twenty-year-old sexual offender designation. Id. at 1310.

Analogous to the time-barred claims in Swearingen, since 2015 Kirkpatrick has carried a driver license marked SEXUAL PREDATOR and claims harm from doing so since that time. Kirkpatrick had four years from 2015 to file suit before the statute of limitations expired. He did not. Barring some new, injurious, action on the part of the Director, Kirkpatrick does not receive a new four-year limitations period every eight years when he renews his driver license. The successive renewals of Kirkpatrick's driver license "do not

[13] The Swearingen Court excused the parties' delay in bringing these claims earlier because the amendments to the registry statute had grown "more and more burdensome over the years" with the 2018 amendments being "the straw that broke the camel's back." 51 F.4th at 1308, 1309. Here, by contrast, Kirkpatrick alleges the same harm today as he did in 2015. The circumstance of the 2020 driver license renewal did not change anything in this regard.

involve separate factual predicates and therefore do not warrant separate statute-of-limitations calculations." Brown, 335 F.3d at 1262. The 2020 renewal of Kirkpatrick's license did not start a new limitations period.[14]

Nor is Kirkpatrick's claim saved by the continuing violation doctrine. "The continuing violation doctrine permits a plaintiff to sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period." Ctr. for Biological Diversity v. Hamilton, 453 F.3d 1331, 1334 (11th Cir. 2006).[15] However, the doctrine is limited to those circumstances where a party is subjected to continuing violations, not merely

[14] This same principle holds true in other areas of the law as well. See, e.g., Klehr v. A.O. Smith Corp., 521 U.S. 179, 189-90 (1997) (explaining in antitrust law that a plaintiff cannot use new predicate acts as a basis for recovery absent a showing that the new act caused harm over and above the harm caused by earlier, untimely acts); Lehman v. Lucom, 727 F.3d 1326, 1330-31 (11th Cir. 2013) (explaining civil RICO's "separate accrual rule," under which an injury from a new RICO predicate act must be more than a continuation of the initial injury in order to qualify as "new and independent," and therefore actionable); Mann v. Palmer, 713 F.3d 1306, 1312-13 (11th Cir. 2013) (holding in death penalty litigation that absent a showing that the substitution of one drug for another constituted a substantial alteration to protocol, claims were untimely unless filed within four years of adoption of lethal injection as method of execution); Burnam v. Amoco Container Co., 755 F.2d 893, 894 (11th Cir. 1985) (in an ADEA case, determining that without new and discrete acts of discrimination, a refusal to rehire cannot resurrect an expired discrimination claim; otherwise any potential plaintiff could circumvent the limitations period by reapplying for employment).

[15] The Court rejects plaintiff's position (Doc. 46 at 5 n.3) that Center for Biological Diversity and other cases with fact patterns significantly different from Kirkpatrick's case are "simply irrelevant." The principles of law announced therein are not dependent on their facts.

continuing harms from a previous (now out of time) violation. See Swearingen, 51 F.4th at 1305 ("A prior violation of a plaintiff's constitutional rights is not a continuing violation simply because its effects linger into the present."). For example, in Swearingen, the Eleventh Circuit found the continuing violation doctrine applied to plaintiffs' claims that they suffered reputational injury and substantive due process violations from continued enforcement actions which included regular visits to neighbors and increasingly onerous registration requirements, injuries caused not by their initial designation as sex offenders but by the continued threat of enforcement and more frequent registration requirements. 51 F.4th at 1307-09 (citing Ctr. for Biological Diversity, 453 F.3d at 1334-35). However, the continuing violation doctrine did not apply to the Swearingen plaintiffs' Eighth Amendment and substantive due process claims which were based on the lifelong sex offender registry requirement because those causes of action were complete more than twenty years earlier when plaintiffs were initially designated and registered as sex offenders. Id. at 1310. See also McGroarty v. Swearingen, 977 F.3d 1302, 1307-08 (11th Cir. 2020) (holding continuing violation doctrine could not save a constitutional challenge to the posting of plaintiff's personal information on Florida's sex offender registry website even after plaintiff completed probation and moved out of state where the posting had initially occurred fourteen years earlier and plaintiff knew six years earlier that Florida planned to maintain the posting

even after he moved); Huff v. Swearingen, 847 F.App'x 816, 817 (11th Cir. 2021) (rejecting application of continuing violation doctrine where plaintiff knew his personal information was published on Florida's sex offender registry in 2012 but did not sue until 2019, finding the losses of employment opportunities were continuing harms, not continuing violations of his constitutional rights) (citing McGroarty, 977 F.3d at 1307-08).

The continuing violation doctrine "is premised on the equitable notion that the statute of limitations ought not to begin to run until facts supportive of the cause of action are or should be apparent to a reasonably prudent person similarly situated." McGroarty, 977 F.3d at 1308 (quoting Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1222 (11th Cir. 2001) (internal quotations omitted). Thus, in § 1983 actions, the Eleventh Circuit has determined that the continuing violations doctrine does not save untimely claims for "plaintiffs who were able to avoid the problem by filing within the statute of limitations period." McGroarty, 977 F.3d at 1308. See also Lovett v. Ray, 327 F.3d 1181, 1183 (11th Cir. 2003) (rejecting application of continuing violation doctrine where the defendant's action in deciding not to consider parole again for eight years "was a one time act with continued consequences" which does not extend the limitations period); Brown, 335 F.3d at 1261 (holding that Lovett precluded application of continuing violation doctrine to prisoner's untimely ex post facto claim); Holland, 2026 WL 1329206, at *2 (explaining that while plaintiff alleged

continuing reputational injuries from statute imposing a continuing duty to update information under threat of prosecution, continuing violation doctrine did not apply because plaintiff could have timely filed suit when his alleged reputational injuries began—back when he was first required to register as a sex offender); Staley v. Sex. Offender Reg. Rev. Bd., No. 22-11813, 2023 WL 1797018, at *3-4 (11th Cir. Feb. 7, 2023) (holding continuing violation doctrine did not apply to claim challenging plaintiff's classification as sexual predator which sought to enjoin continued compliance with attendant restrictions where his alleged injuries accrued when he was classified as a predator, notwithstanding that he continued to face collateral effects of the decision) (citing Ctr. for Biological Diversity, 453 F.3d at 1334; Lovett, 327 F.3d at 1183; and Swearingen, 51 F.4th at 1310); USA Ent. Grp., Inc. v. Tony, 847 F. App'x 642, 647 (11th Cir. 2021) (determining continuing violation doctrine did not apply, noting plaintiff's earlier threat of legal action as one indication that it could have filed its claim within the original statute of limitations); Smith v. Pate, 741 F. App'x 610, 612 (11th Cir. 2018) (rejecting application of continuing violation doctrine where initial decision to apply new parole procedures was the alleged violation, and later applications of that decision did not extend the limitations period) (citing Brown, 335 F.3d at 1261-62); Harvey v. Dixon, No. 4:24cv494-RH-MAF, 2025 WL 2992925, at *9-10 (N.D. Fla. July 8, 2025) (discussing McGroarty and Swearingen and rejecting application of continuing

violation doctrine in challenge to sex offender registration requirement where plaintiff did not challenge any new provisions or additional burdens, and his "alleged injury stem[med] from his continuing duty to comply with the law," the knowledge of which he had upon sentencing).

The undisputed record before the Court (based in large measure on Kirkpatrick's own deposition testimony) demonstrates that Kirkpatrick knew the facts that supported his claim in 2015, at the latest. See supra at 4-5. Indeed, he told law enforcement in 2014 that he thought the 2014 statutory amendment violated his rights and then contacted a lawyer about filing a claim. Moreover, the harms Kirkpatrick allegedly suffered then are the same as those he allegedly suffers now, further demonstrating his awareness of the claim. The 2020 renewal of Kirkpatrick's driver license is a "continued consequence" of the 2014 amendment, Lovett, 327 F.3d at 1183, providing no basis to avoid the time bar. The continuing violation doctrine does not apply.

Kirkpatrick's suit is barred by the statute of limitations.

## III. Conclusion

The Court finds Kirkpatrick has standing but his claim is untimely. The Court therefore has no occasion to reach the merits. The Court makes no prediction as to the outcome of a challenge presented by a different plaintiff.

Accordingly, it is hereby

**ORDERED:**

Plaintiff's Motion for Summary Judgment (Doc. 39) is **DENIED** and Defendant's Motion for Summary Judgment (Doc. 42) is **GRANTED**. The Clerk is directed to enter judgment in favor of defendant Dave Kerner in his Official Capacity as Executive Director for the Florida Department of Highway Safety and Motor Vehicles and against plaintiff Lane Kirkpatrick. Thereafter, the Clerk shall close the file.

**DONE AND ORDERED** in Jacksonville, Florida the 30th day of July, 2026.

Timothy J. Corrigan

TIMOTHY J. CORRIGAN
Senior United States District Judge

s
Copies:

Counsel of record